**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NICOLAS MARTIN CARDENAS, | * |
| | * |
| Petitioner, | * |
| | *    CIVIL NO. PJM 05-1429 |
| v. | *    CRIMINAL NO. PJM 96-0187 |
| | * |
| | * |
| UNITED STATES OF AMERICA, | * |
| | * |
| Respondent. | * |
| | * |

**OPINION**

Nicolas Martin Cardenas has filed an application for a writ of error *coram nobis* which the Government opposes. For the reasons set forth below, the Court DENIES the application.

**I.**

Cardenas, a native and citizen of Peru, was granted asylum in the United States on July 13, 1994. On April 14, 1997, he pled guilty to one count of mail fraud in violation of 18 U.S.C. §1341 in connection with a scheme to defraud insurance companies by staging automobile accidents and submitting falsified claims. The Court sentenced him to five months in prison, five months of home electronic monitoring, and three years of supervised release, found him liable for $80,785.39 in fraud loss, and ordered him to pay restitution in the amount of $32,506.70. The Fourth Circuit affirmed the conviction and sentence, including the fraud loss and restitution amounts. *United States v. Cardenas*, No. 97-4605, 1998 U.S. App. LEXIS 431 (4th Cir. Jan. 13, 1998) (unpublished). After he served his sentence, an immigration judge in the Justice Department's Executive Office for Immigration Review ordered Cardenas to be deported under 8 U.S.C. §1227(a)(2)(A)(iii) and §1101(a)(43)(M)(i), which provides for the deportation of aliens convicted of any felony involving fraud or deceit where the loss to the victim(s) exceeds $10,000. The Board of Immigration Appeals

affirmed the deportation order, with deportation scheduled for June 1, 2005. On May 25, 2005, Cardenas sought a writ of error *coram nobis* in this Court.[1]

## II.

Cardenas claims he only acceded to the plea agreement because his Public Defender inaccurately advised him he would not be deported if he did so. He claims counsel's failure to advise him as to the collateral consequences of his plea violates his Sixth Amendment right to effective assistance of counsel.

Ineffective assistance of counsel may be raised by way of *coram nobis* only if "no other remedy [is] available." *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). Since he is no longer in custody, Cardenas did not and cannot file for relief under 28 U.S.C. §2255, and since more than 90 days have passed since the Court of Appeals entered judgment in his appeal, Cardenas may not file for certiorari with the Supreme Court. SUP. CT. R. 13(1). *Coram nobis*, therefore, does appear to be the only remedy currently available to him.

The Government, however, submits that Cardenas's claim of ineffective assistance of counsel is controlled by 28 U.S.C. §2255, and is barred by reason of the one year time limitation for filing such petitions under the Anti-Terrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2255 ¶6. The Government suggests that, under *Carlisle v. United States*, 517 U.S. 416 (1996), the §2255 procedural rules control *all* post-conviction collateral attacks based on ineffective assistance of counsel, and that acknowledging *coram nobis* applications would permit defendants to bypass the

---

[1] Writs of error *coram nobis* are common law remedies preserved by the All-Writs Act, 28 U.S.C. §1651(a). ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.") It is a judicial remedy of last resort available only to convicts who are no longer under supervision. "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954).

gatekeeping and procedural barriers of §2255.

Assuming relief by way of *coram nobis* is not procedurally barred, a debatable proposition,[2] it still does not avail Cardenas in the present case. Though no statute of limitations governs *coram nobis* applications, a petitioner must "exercise due diligence" as a "prerequisite to relief." *Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989); *see also Telink, Inc. v. United States*, 24 F.3d 42 (9th Cir. 1994); *United States v. Moore*, 166 F.2d 102 (7th Cir. 1948), *cert. denied*, 334 U.S. 849, 92 L. Ed. 1772, 68 S. Ct. 1500 (1948). Because there is no bright-line rule, "[a] district court considering the timeliness of a petition for a writ of error *coram nobis* must decide the issue in light of the circumstances of the individual case," *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996), keeping in mind that "the writ of error *coram nobis* is not intended to relieve a party from the consequences of his own negligence. It is not available where the facts were known at the trial, or by the exercise of due diligence could have been ascertained." *United States v. Taylor*, 49 F. Supp. 353, 355 (D. W.Va. 1943). This requirement proves Cardenas's undoing in the present case.

The record plainly contradicts his assertion that counsel misrepresented the immigration consequences of his conviction. Throughout the plea negotiations, which Cardenas was fully aware of, the amount of fraud loss to be attributed to him was an open term, to be deferred to the sentencing hearing. In his May 15, 1997 letter to the probation officer preparing Cardenas's Pre-sentence Report, a copy of which was provided to him, counsel expressly disputed the fraud loss amount submitted by the Government, and requested leniency because "[a]s a result of his plea and conviction, there is the very real possibility that Mr. Cardenas will be deported back to Peru." In

---

[2] Though the Supreme Court has noted it is "difficult to conceive of a situation in a federal criminal case today where [*coram nobis*] would be necessary or appropriate," *United States v. Smith*, 331 U.S. 469, 476 (1947), in *United States v. Morgan*, 346 U.S. 502, 510 (1954), it said: "The contention is made that [28 U.S.C. §2255] . . . should be construed to cover the entire field of remedies in the nature of *coram nobis* in federal courts. We see no compelling reason to reach that conclusion."

response to the draft Pre-sentence Report, counsel again wrote to the probation officer (copy to Cardenas) disputing the fraud loss amount. Yet again at sentencing, counsel specifically asked the Court to find a fraud loss of less than $10,000 because deportation might otherwise result. ("Judge, I can't emphasize more that Mr. Cardenas's consequences to him here today other than penalty Your Honor imposes . . . it is likely that he would be deported . . . . Specifically, if Your Honor were to order restitution in an amount . . . of less than [$]10,000, that that might perhaps be available to Mr. Cardenas's counsel, his immigration case, since one of the possible basis [sic] for deportation is that, this being a fraud case, that the loss involved is more than $10,000.") (Sentencing Tr. 121.). If this were not enough, counsel appealed the fraud loss amount to the Fourth Circuit, albeit without success.

At sentencing, Cardenas had ample opportunity to express any concern he might have had as to the possible consequences of his plea. But at the end of a three-hour hearing, when queried by the Court, he stated through his translator that he understood his plea, had discussed it thoroughly with his attorney, and agreed to its terms and conditions.

Indeed, Cardenas's affidavits, from himself and his sister, only confirm the fact that counsel explained the significance of the amount of fraud loss. Both read:

> "Mr. Citaramanis stated that the one issue that still needed to be resolved was the amount of restitution, and that because the total amount involved in the one accident was less than $10,000, there was no way that [Cardenas] could be deported for this offense, as that was the minimum amount required for a theft offense to result in deportation."

(Petr.'s Ex. D 3.) This admission clearly undercuts the later statement in both affidavits that:

> "At no time did Mt. Citaramanis advise [Cardenas] that there was a chance that the judge would have to determine the amount of restitution, and that if he found that more than $10,000 was involved, [Cardenas] could and would be deported for the offense for which [he] pled guilty."

(Id.)[3] The Court is satisfied that Cardenas understood the possible consequences of his plea at the time he entered it in 1997.

It is also clear that Cardenas understood the consequences in 1999, when his deportation was ordered. The fact that he waited almost eight years after he was sentenced and five years after his deportation was ordered before filing the present petition dooms his petition. The due diligence that is required of a petitioner for *coram nobis* is measured not from the moment he ascertains the correct path to legal relief, but from the moment he identifies the error he seeks to remedy. *See Foont*, 93 F.3d 76 (delay of four years and eight months unjustified); *Telink*, 24 F.3d 42 (delay of five years unjustified); *Klein*, 880 F.2d 250 (delay of seven years unjustified); *Ahn v. United States*, 96 Fed. Appx. 43 (2d Cir. 2004) (delay of four years and one month unjustified). Cardenas's petition accuses his immigration attorneys of negligence for failing to advise him that he could apply for *coram nobis* relief, but the clock for him to take action began to run when he came to believe that he had been misled as to the consequences of his plea. As with the petitioner in *Ahn*, Cardenas's "strategy of contesting his deportation first through immigration proceedings and then, only after those efforts failed, by challenging the criminal offense underlying his deportation is not an adequate reason for delay." 96 Fed. Appx. at 44. Cardenas failed to exercise the due diligence required for post-conviction relief.

### IV.

Cardenas's claim of ineffective assistance of counsel fails for the obvious reason that counsel

---

[3] This is not the only inconsistency in Cardenas's affidavits. In fact, none of the "accidents" in which he was involved generated fraud loss amounts below $10,000; the lowest amount of fraud loss associated with a single accident was $12,900. Thus, even if the Court had attributed no more than the fraud loss from the one accident to which he pled, he would have exceeded the $10,000 threshold.

in fact did precisely what Cardenas accuses him of not having done – he advised Cardenas of the possible deportation consequences of his plea. But just so there is no mistaking the baselessness of Cardenas's claim, the Court notes that the Fourth Circuit, agreeing with a majority of other Circuit Courts of Appeal, has held that "an attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988); *accord United States v. Gonzalez,* 202 F.3d 20 (1st Cir. 2000); *United States v. Santelises*, 509 F.2d 703 (2d Cir. 1975) (per curiam); *United States v. Banda*, 1 F.3d 354 (5th Cir. 1993); *Ogunbase v. United States*, No. 90-1781, 1991 U.S. App. LEXIS 1852 (6th Cir. Feb. 5, 1991) (unpublished); *United States v. George*, 869 F.2d 333 (7th Cir. 1989); *United States v. Fry*, 322 F.3d 1198 (9th Cir. 2003); *Varela v. Kaiser*, 976 F.2d 1357 (10th Cir. 1992); *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985); *United States v. Del Rosario*, 284 U.S. App. D.C. 90 (D.C. Cir. 1990), *cert. denied*, *Del Rosario v. United States*, 498 U.S. 942, 111 S. Ct. 352, 112 L. Ed. 2d 316 (1990).

## IV.

For the foregoing reasons, the Court DENIES Petitioner Nicolas Cardenas's Application for a Writ of Error *Coram Nobis*.

A separate Order will ISSUE.

|  |  |
|---|---|
| July 7, 2006 | /s/ |
| DATE | PETER J. MESSITTE |
|  | UNITED STATES DISTRICT JUDGE |